IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JOHN J. MALONE SR., individually, | ) | 4:09CV3208 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| OMAHA HOUSING AUTHORITY, | ) | |
| BRAD ULRICK, BRAD ASHFORD, | ) | |
| GEORGE ACHOLA, WILLIAM | ) | |
| BEGLEY, BOB FIDONE, | ) | |
| MICHELLE PETERS, and DONALD | ) | |
| KLEINE, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on five separate Motions to Dismiss, filed by Defendants. (Filing Nos. 40, 42, 44, 48, and 50.) As set forth below, the Motions are granted.

### I. BACKGROUND AND SUMMARY OF COMPLAINT

Plaintiff filed his Complaint in this matter against the Omaha Housing Authority ("OHA"), and seven individuals who are identified in the Complaint as residents of Omaha, Nebraska and "material to this case." (Filing No. 1 at CM/ECF pp. 1-3.) Condensed and summarized, Plaintiff sues Defendants under the federal False Claims Act ("FCA"). (*Id.* at CM/ECF p. 2.) Plaintiff alleges that the OHA administers certain federal funds in "providing affordable housing to those in need." (*Id.* at CM/ECF p. 4.) Since 2005, Plaintiff has provided housing to individuals under this federal program through private contracts with the OHA. (*Id.*) Plaintiff alleges generally that he is a "whistleblower" and that he has reported OHA's false claims for payment to the United States. (*Id.* at CM/ECF pp. 4-6.) Plaintiff also alleges that the OHA retaliated against him for making such reports by "denying three of his

properties" low-income housing contracts and by sending "inspectors" to his property. (*Id.* at CM/ECF pp. 7-8.) Plaintiff further alleges that OHA has interfered with several contracts between him and his tenants. (*Id.* at CM/ECF pp. 8-9.)

Defendants have all filed Motions to Dismiss. (Filing Nos. 40, 42, 44, 48, and 50.) Despite having more than two months in which to do so, Plaintiff did not file a response to any of the pending Motions. The Motions to Dismiss are therefore deemed fully submitted.

## II. ANALYSIS

A. *False Claims Act*

Plaintiff's first claim is brought *pro se* under the FCA. (Filing No. 1.) Although the FCA is silent on the matter, it has long been the law in the Eighth Circuit that a pro se plaintiff may not prosecute a *qui tam* action. *United States v. Onan*, 190 F.2d 1, 6-7 (8th Cir. 1951). As set forth in *Onan*:

> [W]e do not think that Congress could have intended to authorize a layman to carry on such suit as attorney for the United States but must have had in mind that such a suit would be carried on in accordance with the established procedure which requires that only one licensed to practice law may conduct proceedings in court for anyone other than himself. While the Supreme Court has given this Section 232 a liberal construction . . . it is unthinkable that Congress by this Act intended to license laymen to practice law. The practice of law is affected with a public interest and an attorney at law as distinguished from a layman, has both public and private obligations, being sworn to act with all good fidelity toward both his client and the court.

*Id.* Citing *Onan*, many other federal circuit courts agree. *See U.S. ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir. 2008) ("Because relators lack a personal

interest in False Claims Act *qui tam* actions, we conclude that they are not entitled to proceed pro se."); Timson v. Sampson, 518 F.3d 870, 874 (11th Cir. 2008) (holding that a non-attorney pro se plaintiff may not litigate a *qui tam* action if the United States declines to intervene); Stoner v. Santa Clara Cnty. Office of Educ., 502 F.3d 1116, 1126-27 (9th Cir. 2007) ("Because *qui tam* relators are not prosecuting only their 'own case' but also representing the United States and binding it to any adverse judgment the relators may obtain, we cannot interpret § 1654 as authorizing *qui tam* relators to proceed *pro se* in FCA actions."); U.S. ex rel. Lu v. Ou, 368 F.3d 773, 775-76 (7th Cir. 2004), *overruled on other grounds*, 129 S. Ct. 2230 (2009) (holding that non-attorney pro se litigants may not proceed in a *qui tam* action on behalf of the United States).

Plaintiff originally filed this matter on October 7, 2009, under seal pursuant to 31 U.S.C. § 3730. (Filing No. 1.) On June 18, 2010, the United States filed its Notice of Election to Decline Intervention. (Filing No. 26.) In that filing, the United States stated that it would not intervene in this action and requested that the court unseal the Complaint. (*Id.*) The court granted the United States's request. (Filing No. 27.) At the time of filing the Complaint, Plaintiff was represented by counsel. (Filing No. 1.) However, shortly before the United States declined to intervene, counsel for Plaintiff withdrew and Plaintiff elected to proceed with his claims pro se. (*See* Filing Nos. 21, 23, and 25.) There is nothing in the record before the court showing that Plaintiff is a licensed attorney. As set forth above, the law is clear that Plaintiff, as a non-attorney, may not prosecute the *qui tam* claim under the FCA pro se. As such, the court will dismiss this claim without prejudice to reassertion by the United States.

B.   *Retaliation*

For his second claim, Plaintiff brings a retaliation claim pursuant to the FCA. 31 U.S.C. § 3730(h). As set forth in that section:

3

> Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

*Id.* Prior to May 20, 2009, this section stated:

> Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole. Such relief shall include reinstatement with the same seniority status such employee would have had but for the discrimination, 2 times the amount of back pay, interest on the back pay, and compensation for any special damages sustained as a result of the discrimination, including litigation costs and reasonable attorneys' fees. An employee may bring an action in the appropriate district court of the United States for the relief provided in this subsection.

31 U.S.C. § 3730(h), *amended by* 31 U.S.C. § 3130(h) (2009). Thus, prior to the 2009 amendment, the retaliation provisions of this section applied only to employees. Further, although the Eighth Circuit has not discussed whether the provision applying this section to contractors and agents is retroactive, at least one other circuit court has done so. In *Lytle v. Capital Area Intermediate Unit*, the Third Circuit determined that "Congress explicitly provided that the amendment [to §3730] shall take effect on the date of enactment of this Act and *shall apply to conduct on or after the date of enactment*. When, as here, Congress has expressly provided that the statute in

4

question . . . should not apply retrospectively . . ., then we follow Congress' express prescription and apply the statute accordingly. 393 F. App'x 955, 958 (3d Cir. 2010) (quotations omitted, emphasis added). Because the plaintiffs in *Lytle* challenged "only conduct occurring well before 2009," and were not employees of the defendant, they were not entitled to the "benefit of the amended version of § 3730(h)." *Id.* As such, the Third Circuit affirmed the dismissal of the plaintiffs' retaliation claims.

Here, Plaintiff's Complaint alleges a retaliation claim against OHA pursuant to 31 U.S.C. § 3730(h). (Filing No. 1 at CM/ECF p. 7.) In particular, Plaintiff alleges that OHA retaliated against him "[o]n November 10, 2006," and that inspectors "failed properties" in 2006. (*Id.*) Plaintiff does not allege that OHA or any other Defendant engaged in retaliatory conduct at any point after May 20, 2009. (*Id.* at CM/ECF pp. 7-8.) In addition, Plaintiff does not allege that he is an employee of any Defendant. Rather, the Complaint reveals that Plaintiff's only relationship to Defendants is that he "directly manag[es] residential real estate rental properties" and has engaged in contracts with OHA. (*Id.* at CM/ECF pp. 1-4.) As set forth above, prior to May 20, 2009, the anti-retaliation provisions of 31 U.S.C. § 3730 were limited to employees, and the May 20, 2009 amendments were not retroactive. As in *Lytle*, because Plaintiff alleges only pre-May 20, 2009, conduct and because he is not an employee, he cannot bring a retaliation claim under 31 U.S.C. § 3730 and this claim is dismissed with prejudice.

C.   *Tortious Interference with Contracts*

For his third and final claim, Plaintiff alleges that Defendants tortiously interfered with contracts between him and his tenants. (Filing No. 1 at CM/ECF pp. 8-9.) Defendants are either a political subdivision or employees of a political subdivision. *See* Neb. Rev. Stat. § 71-15,168 (2010); Neb. Rev. Stat. § 13-903 (2010). As such, Plaintiff's claims are governed by the Political Subdivisions Tort Claims Act (the "PSTCA"). The PSTCA "reflects a limited waiver of governmental

5

immunity and prescribes the procedure for maintenance of a suit against a political subdivision." *Hatcher v. Bellevue Fire Dep't*, 628 N.W.2d 685, 691 (Neb. 2001); *see also* Neb. Rev. Stat. § 13-902 (2010). In addition, in Nebraska, the PSTCA "is the exclusive means by which a tort claim may be maintained against a political subdivision or its employees." *Jessen v. Malhotra*, 665 N.W.2d 586, 590 (Neb. 2003). However, "[a] political subdivision retains its sovereign immunity with respect to certain listed exceptions found in the PSTCA." *Doe v. Omaha Pub. Sch. Dist.*, 727 N.W.2d 447, 454 (Neb. 2007). Where "a plaintiff's claim comes within an exception pursuant to [the PSTCA], then the claim fails based on sovereign immunity, and the political subdivision is not liable." *Id.* The PSTCA expressly states that "any claim arising out of . . . interference with contract rights," is excepted from the PSTCA and political subdivisions and their employees are not liable based on such claims. Neb. Rev. Stat. § 13-910.

Plaintiff's third claim is titled "OHA's Tortious Intereference With Plaintiff's Existing Contractual Relationships" and claims that Defendants interfered with four separate contracts between Plaintiff and his tenants. (Filing No. 1 at CM/ECF pp. 8-9.) This "tortuous [sic] interference" caused Plaintiff to suffer financial losses. (*Id.* at CM/ECF p. 9.) It is clear that Defendants are either a political subdivision or employees of a political subdivision in Nebraska. It is equally clear that Defendants enjoy sovereign immunity from claims for tortious interference with contracts under the PSTCA. As such, this claim is also dismissed.

IT IS THEREFORE ORDERED that:

1.     Defendants' Motions to Dismiss (filing nos. 40, 42, 44, 48, and 50) are granted, as set forth in this Memorandum and Order. Plaintiff's False Claim Act claim (count I of the Complaint) is dismissed without prejudice. Plaintiff's retaliation and tortious interference with contractual relationships claims (counts II and III of the Complaint) are dismissed with prejudice.

2. A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 14th day of April, 2011.

BY THE COURT:

*Richard G. Kopf*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.